# United States District Court

SOUTHERN DISTRICT OF NEW YORK

THEODORE JOHNSON, an individual,

**V.**

LIONS GATE ENTERTAINMENT CORP., and
BLACK ENTERTAINMENT TELEVISION, INC.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**06 CV 5866**

**JUDGE BAER**

TO: (Name and address of defendant)

Lions Gate Entertainments Corp.,
2700 Colorado Avenue
Suite 200
Santa Monica, CA 90404

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Eddy Salcedo, Esq.
Seyfarth Shaw LLP
1270 Avenue of the Americas
New York, New York 10020

an answer to the complaint which is herewith served upon you, within  20  days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(BY) DEPUTY CLERK

AUG 0 3 2006

DATE

2002 © American LegalNet, Inc.

# United States District Court

SOUTHERN DISTRICT OF NEW YORK

THEODORE JOHNSON, an individual,

V.

LIONS GATE ENTERTAINMENT CORP., and
BLACK ENTERTAINMENT TELEVISION, INC.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 06 CV 5866

JUDGE BAER

TO: (Name and address of defendant)

Black Entertainment Television, Inc.
One BET Plaza
1235 W. Street N.E.
Washington, D.C. 20018

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Eddy Salcedo, Esq.
Seyfarth Shaw LLP
1270 Avenue of the Americas
New York, New York 10020

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                                    AUG 0 3 2006
CLERK                                                  DATE

(BY) DEPUTY CLERK

2002 © American LegalNet, Inc.



David M. Monachino (DM 1527)
Eddy Salcedo (ES 3391)
Seyfarth Shaw LLP
1270 Avenue of the Americas
New York, New York 10020
Tel: (212) 218-5500
Fax: (212) 218-5526

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THEODORE JOHNSON, an individual, | Case No.: 06 CV 5866 (HB) |
| Plaintiff, |  |
| -against- | COMPLAINT |
| LIONS GATE ENTERTAINMENT CORP., and BLACK ENTERTAINMENT TELEVISION, INC., | (JURY TRIAL DEMANDED) |
| Defendants. |  |

Plaintiff Theodore Johnson ("Plaintiff" or "Mr. Johnson") by his attorneys, Seyfarth Shaw LLP, as and for his complaint against defendants Lions Gate Entertainment Corp. and Black Entertainment Television, Inc. (collectively, the "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.  This action involves the unauthorized, knowing, and continuing display and distribution by transmission to the public of Plaintiff's original copyrighted work of art entitled *Black Angel*, which violates the Copyright Act of the United States, 17 U.S.C. §101 *et seq.*

NY1 26428708.1

Plaintiff seeks to enjoin Defendants' unlawful activities and recover damages and profits resulting from Defendants' misconduct.

## JURISDICTION AND VENUE

2.  This action arises under the Copyright Act of the United States, 17 U.S.C. § 101 *et seq.* Jurisdiction is conferred upon this Court by 28 U.S.C. §1338.

3.  Venue lies in this District under 28 U.S.C. §1400(a), because Defendants Lions Gate Entertainment Inc. and Black Entertainment Television, Inc. can be found in this District in view of the theater release, DVD release and Television broadcast of the infringing movie *Caught Up*, in this District.

## THE PARTIES

4.  Plaintiff, Mr. Theodore Johnson, is a citizen of the United States. He currently resides in New Jersey and creates work of art for clients in this district.

5.  Upon information and belief, defendant Lions Gate Entertainment Corp. ("Lions Gate"), is a British Columbia, Canada, Corporation, with offices at 2700 Colorado Avenue., Suite 200, Santa Monica, CA 90404.

6.  Upon information and belief, defendant Black Entertainment Television, Inc. ("BET"), is a District of Columbia Corporation, with offices at One BET Plaza, 1235 W. Street N.E., Washington, D.C. 20018.

2

## STATEMENT OF FACTS

7. Mr. Johnson is a professional artist and the founder of Johnson Studios, which focuses primarily on commissions for original works of art and masterpiece reproductions. Mr. Johnson has won numerous awards and garnered critical acclaim for his artwork.

8. Mr. Johnson is the creator of an original oil painting entitled *Black Angel*, (hereinafter "Artwork"). The Artwork was commissioned in 1995 by The Supper Clubs of America as one of a series of original "angel-themed" paintings and Gauguin reproductions for display at the Gauguin-LA in Los Angeles, CA.

9. The Artwork is a wholly original work that is fixed in a tangible medium of expression and is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 102(a).

10. On June 24, 2005, the United States Copyright Office issued a certificate of registration for the Artwork, with Mr. Johnson as the sole author of the Artwork. A true and correct copy of the registration certificate for the Artwork is annexed hereto as Exhibit "A."

11. From the date of creation of the Artwork, Mr. Johnson has been and still is the sole proprietor of all rights, title, and interest in the copyright of the Artwork.

12. Upon information and belief, the Artwork is currently on display at the Gauguin-LA in Los Angeles, California, pursuant to a certain letter of agreement, whereby Mr. Johnson permitted display of the Artwork at the Gauguin-LA.

13. Mr. Johnson did not assign, transfer or otherwise relinquish the exclusive right to control or otherwise authorize: (a) alternate displays of the Artwork; (b) derivative works

based upon the Artwork; (c) copies of the Artwork in any media; or (d) compilations including the Artwork.

14.     On or about May 27, 2005, Mr. Johnson learned that Defendants had infringed Plaintiff's rights, including his rights under the Copyright Act, with respect to the Artwork by displaying and distributing to the public by transmission the Artwork, without authorization, in scenes of a motion picture entitled *Caught Up*.

15.     Upon information and belief, Heller Highwater produced *Caught Up* in association with LIVE Entertainment Inc. and LIVE Film and Mediaworks Inc. (collectively "LIVE").

16.     Upon information and belief, LIVE released *Caught Up* in United States theaters on or about February 27, 1998, closing on or about May 1, 1998, with, upon information and belief, reported gross theater receipts of about $6.7 million dollars.

17.     Upon information and belief, on or about May 28, 1998, LIVE Film and Mediaworks Inc. changed their name to Artisan Pictures Inc., and LIVE Entertainment Inc. changed their name to Artisan Entertainment Inc.

18.     Upon information and belief, Artisan Entertainment Inc. in association with Artisan Pictures (collectively "Artisan") released *Caught Up* on DVD on or about July 1998.

19.     Upon information and belief, as of December 15, 2003, Lions Gate completed the purchase of Artisan for about $160 million and acquired rights to Artisan's film library, including the rights of *Caught Up*.

20. Mr. Johnson learned of Defendants' infringement with respect to the Artwork when he happened to see the subject motion picture on BET's cable television station.

21. On or about May 31, 2005, Mr. Johnson purchased a DVD copy of *Caught Up*.

22. Upon viewing the DVD copy of *Caught Up*, Mr. Johnson observed that in addition to the scenes in the film depicting the Artwork without authorization, the Artwork also is used as the background for the menu screen of the DVD.

23. Specifically, the Artwork appears behind the lead actor's head in the upper left hand corner of the menu screen. A true and correct copy of the menu screens depicting the Artwork are annexed hereto as Exhibit "B."

24. In the director's commentary of *Caught Up*, Mr. Darin Scott, the director of the motion picture, discussed the importance of the Artwork to the film, noting the similarity in appearance between the lead actress of the film and the woman portrayed in the painting. In particular, Mr. Scott stated that "one thing that is really cool in this scene is you see the picture of the angel. That was actually in the Century City Club where we shot this last scene, on a wall there. And so many people who see the movie there, they go, the angel it is such a good likeness of Cynda. I'm like, hey we just found it and stuck it there behind her desk, you know. It was perfect for this."

25. By letter dated July 1, 2005, Mr. Johnson notified Lions Gate that it had infringed Mr. Johnson's copyright by the unauthorized public display and distribution of the Artwork by transmission in the motion picture *Caught Up*. Mr. Johnson demanded that Lions Gate cease and desist from all further display and distribution of Plaintiff's copyrighted Artwork.

5

26.     Lions Gate did not respond to Mr. Johnson's demand.

27.     Upon information and belief, *Caught Up* has been broadcast multiple times on BET's cable television station, including on February 11, 2005, February 12, 2005, May 27, 2005, and July 30, 2005. The infringing movie continues to be available for sale on various websites including Amazon.com.

28.     The continued public display and distribution of the Artwork in the infringing scenes of *Caught Up* by Defendants constitutes a willful and knowing infringement upon Mr. Johnson's rights in the copyrighted Artwork.

29.     Upon information and belief, Defendants' individual and collective past and continuing acts of infringement in making the infringing motion picture *Caught Up*, releasing the infringing motion picture in the U.S. and performing the infringing motion picture in theaters throughout the U.S., releasing the infringing motion picture on DVD and selling the infringing DVD copies throughout the U.S., and performing the infringing motion picture by licensing the infringing motion picture for broadcast and broadcasting the motion picture on television throughout the U.S. have all generated profits for Defendants.

**FIRST CAUSE OF ACTION**
(Copyright Infringement)

30.     Plaintiff herein incorporates the allegations set forth in paragraphs 1 through 29 of the Complaint.

31.     Defendants' conduct complained of in the paragraphs above has violated and continues to violate the Plaintiff's exclusive rights in the copyright of the Artwork. The conduct interferes with Plaintiff's exclusive right to reproduce or license reproduction of the copyrighted

Artwork, to prepare derivative works based on the copyrighted Artwork, publicly display or distribute the copyrighted Artwork, and to license others to display or distribute the copyrighted Artwork.

32. As a consequence of Defendants' various infringements, Plaintiff has suffered and will continue to suffer economic loss and injury to his copyright ownership in the Artwork. Plaintiff has to his detriment sustained damages including, but not limited to, the dilution or destruction of the value of his copyrighted material, the loss of credit, recognition and benefits caused by Defendant's failure to attribute to Plaintiff in the movie credits and DVD jacket his authorship of the Artwork appropriated by Defendants, and all gains, profits, and advantages derived by Defendants from their acts of infringement.

**WHEREFORE**, Plaintiff prays that this Honorable Court enter judgment:

(i.) Enjoining Defendants, their agents, and servants, be enjoined from infringing Plaintiff's copyright in any manner, and from publicly displaying or distributing to the public the Artwork by transmission;

(ii.) In favor of Plaintiff and against Defendants in an amount to be determined at trial for such damages as Plaintiff has sustained in consequence of Defendants' infringement of Plaintiff's copyright, including but not limited to Plaintiff's actual damages, damages for the injury to the value of Plaintiff's property, damages for loss of Plaintiff's credits, and all other actual damages sustained by Plaintiff, and to account for and pay to Plaintiff all gains, profits, and advantages derived by Defendants by reason of their infringement;

7

(iii.) Directing Defendants to deliver up to Plaintiff all copies of the infringing motion picture in their possession or under their control; and

(iv.) Granting Plaintiff such other and further relief as the equities of the case may require and as this Court may deem just and proper under the circumstances.

Dated: August 2, 2006
New York, New York

Respectfully submitted,

_____
David M. Monachino (DM 1527)
Eddy Salcedo (ES 3391)
Seyfarth Shaw LLP
1270 Avenue of the Americas
New York, New York 10020
Tel: (212) 218-5500
Fax: (212) 218-5526